UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| MARY JANE (MJ) LUNZMAN,<br><br>            Plaintiff,<br><br>    vs.<br><br>BROWN COUNTY, SD; DUANE SUTTON; MIKE GAGE; DREW DENNERT; DOUG FJELDHEIM; MIKE WIESE; KARLY WINTER-GOODWIN; ALLISON TUNHEIM, in their official capacities,<br><br>            Defendants. | **1:25-CV-1008-CCT**<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT<br>AND<br>GRANTING DEFENDANTS' MOTION TO DISMISS** |

Defendants Brown County, Duane Sutton, Mike Gage, Drew Dennert, Doug Fjeldheim, Mike Wiese, Karly Winter-Goodwin, and Allison Tunheim filed a motion to dismiss Plaintiff Mary Jane Lunzman's first amended complaint for failure to state a claim. Docket 10. Lunzman opposed the motion, Docket 12, and moved for leave to file a second amended complaint, Docket 13. Defendants request that the Court deny her motion for leave to amend as futile. Docket 18.

## PROCEDURAL BACKGROUND

Lunzman filed her complaint on April 1, 2025, alleging claims of Title VII discrimination, age discrimination, disability discrimination, and retaliation. Docket 1. Then on May 1, 2025, she filed an amended complaint that included the same claims and asserted additional factual allegations. Docket 6.

1

She now moves for leave to file a second amended complaint. Docket 13. This proposed complaint is twenty-two pages long. Docket 13-1. She does not identify the changes from her first amended complaint, Docket 6, as required by South Dakota's Local Rule of Civil Practice. D.S.D. Civ. LR 15.1 ("any party moving to amend or supplement a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified."). Instead, she highlighted the entire second amended complaint. Docket 13-1. She also did not use the same format in her second amended complaint as she did in her first amended complaint. *Id.* The inconsistent formatting and her failure to comply with Rule 15.1 make it difficult for the Court to determine the differences between the first and second amended complaints.

From the Court's comparative review of Lunzman's first amended complaint, Docket 6, against her proposed second amended complaint, Docket 13-1, it appears that Lunzman's substantive new or changed allegations include the following.

(1) She added new parties:
    a. Monica Hein – Brown County Jail Nurse
    b. City of Aberdeen
    c. Dave McNeil – Aberdeen Chief of Police
    d. Aberdeen Police Department.

(2) She is now suing all defendants "in their official and individual capacities," as opposed to just in their official capacities.

(3) She added new facts or changed certain facts:
    a. She changed her alleged disability to a head injury as opposed to menopause and a head injury.

2

     b. She added facts regarding Monica Hein, a jail nurse at the Brown County Jail, and an allegation that the Brown County Commission directed the Sheriff regarding blood draws and control of the jail.

     c. She added allegations that certain documents either were placed in her personnel file incorrectly or are missing from her personnel file; that she was not given the chance to defend herself at Brown County Commission meetings where her employment was discussed; that she was transferred from being a blood tech to a detention officer position on April 4, 2024; and that Brown County Human Resource Director Allison Tunheim received a letter advising that Lunzman could work from home, which Tunheim allowed.

(4) She added new causes of action or changed certain causes of action:

     a. She omitted her Age Discrimination in Employment Act (ADEA) claim.

     b. She modified her Americans with Disabilities Act (ADA) claim to only allege a head injury as a disability.

     c. She added a § 1983 First Amendment retaliation claim.

     d. She added a § 1983 Fourteenth Amendment equal protection and due process claim.

     e. She added a § 1983 claim for deprivation of rights under color of state law.

     f. She modified her Title VII claim to allege she was subject to a hostile work environment and retaliation.

     g. She added state law claims for retaliation and negligent supervision.

     h. She added a claim for intentional infliction of emotional distress.

     i. She added a collusion claim in violation of 18 U.S.C. § 241.

*Compare* Docket 6, *with* Docket 13-2.

## FACTUAL BACKGROUND

The facts, as stated in Lunzman's proposed second amended complaint, Docket 13-1, are as follows.

3

On June 9, 2023, Lunzman began work with the Brown County Sheriff's Office[1] performing blood draws. Docket 13-1 at 6. On September 3, 2023, Lunzman "was on-call as the Blood Tech and was dispatched to the Brown County Jail to perform a requested blood draw on a DUI arrestee[.]" *Id.* While she was finishing the paperwork for that blood draw, another officer came into the Brown County Jail and requested that blood be drawn from "a very loud, threatening, combative, uncooperative DUI arrestee[.]" *Id.* The officer "stated he would give the paperwork and [blood] tube to [Lunzman] once he had the warrant." *Id.* He then gave her the paperwork and blood tube, and Lunzman drew the blood and provided it to the officer. *Id.*

About three weeks later, Lunzman was asked to attend a meeting with Brown County Jail nurse Monica Hein, Brown County Human Resource Director Allison Tunheim, Brown County State's Attorney Karly Winter-Goodwin, Jail Administrator Mounga, and Jessica Johnson. *Id.* During this meeting, Lunzman was informed that on September 3, 2023, "she had violated protocol regarding warrants[.]" *Id.* She "was presented with a document indicating disciplinary action and threatened with possible termination." *Id.* Lunzman asked if she "needed representation[,]" and Winter-Goodwin told her that she did not. *Id.*

---

[1] Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the fact that Lunzman is married to Brown County Sheriff Dave Lunzman. The Court also notes that Dave Lunzman has brought his own lawsuit against some of the same defendants named in this lawsuit. *See Lunzman v. Brown County, SD et al.*, 25-CV-01017.

At this same meeting, Winter-Goodwin also stated that the officers present at the jail on September 3, 2023, "believed [Lunzman] was impaired while taking blood on both arrestees and indicated so on their 09-03-24 police reports." *Id.* "Both [o]fficers stated they observed [Lunzman] sweating, was slurring speech and had pinpoint pupils." *Id.* Lunzman "explained she was in menopause, due to age, which caused [her] symptoms" except for her "pinpoint pupils[,]" which "were a lasting sign from a previous head injury" in 2013. *Id.*

After the meeting, Winter-Goodwin asked Mounga and Hein "to write a policy regarding the blood draws." *Id.* "Hein refused, so [] Mounga asked [Lunzman] for assistance to research and provide a proposed policy regarding Blood Draws and Warrants." *Id.* Lunzman advised she "was not trained with warrants by [] Hein." *Id.* She also "asked why [] Hein was not being disciplined" and asked other questions related to the September 3 incident. *Id.* at 6–7. According to Lunzman, after this and because there did not exist a policy or procedure, her "discipline was changed to a verbal learning experience" and "the issue was closed[.]" *Id.* at 7. Eventually, both Lunzman and Hein submitted blood draw policy proposals to Mounga, who directed them to submit them to the Sheriff. *Id.*

On September 29, 2023, Hein requested that Lunzman take blood draws for her and be on call until the next morning because Hein forgot she was on call. *Id.* On October 1, 2023,[2] Lunzman "reported conduct related to unsafe

---

[2] Lunzman's second amended complaint indicates October 1, 2024, but based on her other alleged facts, it appears the correct year is 2023.

working conditions and harassment by [] Hein." *Id.*. On October 2, 2023, "Hein went to [] Tunheim and Winter[-Goodwin] accusing [Lunzman] of implementing administrative documents and scheduling Blood Techs[,]" which led to accusations being brought before the Brown County Commission. *Id.*

On October 16, 2023, Winter-Goodwin met with the Sheriff about "an issue involving [a] text message [Lunzman] had sent to a (friend) suspect in a case being reviewed." *Id.*. Winter-Goodwin advised that she "believed there wasn't anything there and that it was just [Lunzman] being a mom." *Id.*

On November 3, 2023, Winter-Goodwin followed up in passing with the Sheriff and Lunzman on the street outside the Sherriff's office that Aberdeen Police Chief Dave McNeil "wanted [the Division of Criminal Investigation] to investigate" the blood draw and e-mail incidents "after they were closed." *Id.* Winter-Goodwin said that "there was nothing there[,]" so "there was no reason [Lunzman] could not draw blood for the weekend[.]" *Id.* Lunzman was on call that weekend to draw blood if needed, but she did not receive any requests for blood draws. *Id.* She later learned through the Sheriff that Police Chief McNeil had decided "to not use [her] for any blood draws." *Id.*

On November 6, 2023, Winter-Goodwin advised the Sheriff that she had "decided to re-open the 09-03-23 blood draw incident and text issue to have [an] independent investigator evaluate the incident[,]" even though Winter-Goodwin had said "there were no complaints" and the Sheriff had been

6

informed "the issues were resolved over a week prior." *Id.* at 8. The investigation was authorized by the Brown County Commission.[3] *Id.*

Lunzman was to be interviewed regarding the investigation on December 5, 2023, but after she consulted with an attorney, the interview was postponed. *Id.* Both the Sheriff and Police Chief McNeil received Freedom of Information Act (FOIA) requests "regarding the investigation and [Lunzman] working for Brown County." *Id.* On December 4, 2023, "[a] news article was published stating, 'Wife of Brown County Sheriff at Center of Investigation Stemming from Jail Blood Draws.'" *Id.* Lunzman claims "[t]he investigation was an internal investigation and should not have been made public." *Id.* She claims the article led "to a series of negative, derogatory and humiliating news articles through 01-03-25[.]" *Id.*

On January 8, 2024,[4] "Hein complain[ed] about administrative directives [the] Sheriff is implementing but [] Hein blame[d] [Lunzman]." *Id.* Hein then went to "Tunheim and Winter[-Goodwin's] Office regarding the issue even though it ha[d] been resolved by [the] Sheriff." *Id.* Near this same time, the Sheriff sent Hein correspondence on the directives, and Hein "sent malicious allegations to [Lunzman] via text." *Id.* Lunzman asked to speak with Hein and

---

[3] The Brown County Commissioners are Duane Sutton (Chair), Mike Gage, Drew Dennert, Mike Wiese, and Doug Fjeldheim. Docket 13-1 at 2. They are named defendants in this case. *Id.*

[4] Lunzman's amended complaint indicates a date of January 8, 2023, but based on her other alleged facts, it appears the correct year is 2024.

7

the jail administrator, but Hein "left stating she was going to speak with []

Tunheim and Winter[-Goodwin]." *Id.* at 8–9.

On January 12, 2024, Winter-Goodwin, Brown County Commission

Chair Duane Sutton, and the Sheriff met and discussed a number of issues. *Id.*

at 9. Winter-Goodwin indicated that Lunzman "was authorized to continue to

volunteer as there is no conflict for Brown County and [the] Jail." *Id.* Winter-

Goodwin again stated that "while there were no complaints, . . . [she] was

having both the 09-03-23 incident and the text message incident investigated

by an outside party[.]" *Id.* During this meeting, Winter-Goodwin also discussed

the Brown County Commission's "ability to oversee Medical, [] Hein, Jail

training and other policies of the welfare of the inmates" and that the Brown

County Commission was "taking over Supervision of the Nurse[.]" *Id.*

On January 20 and 22, 2024, Lunzman was asked to "voluntarily

observe" and help correctional officers "with commonsense, simple tasks to

follow policy and to report back [her] findings." *Id.* Lunzman "sent e-mails to

Administrators[,]" but "[n]o further discussion transpired" about her reporting.

*Id.* However, "comments and e-mails were included in [Lunzman's] personnel

file." *Id.*

Then, on January 30, 2024, the Brown County Commission met with the

Sheriff in an executive meeting and "ruled [that Lunzman] was the problem and

prohibited her from volunteer status . . . and terminated [Lunzman] from jail

blood draws, and they [took] her FOB." *Id.* Lunzman claims this "removed all

personal liability protections." *Id.* Lunzman was not given any "legal or

procedural notice there were complaints" or "that she was under investigation or at risk of termination." *Id.*

Also on January 30, the Sheriff was informed that supervision of the nurse would remain under his authority, and he was ordered to reinstate blood draws. *Id.* The Brown County Commission took over the Sheriff's "control of access to the Jail . . . and Court Security" and took his keys and FOB. *Id.* According to Lunzman, as of February 1, 2024, "Defendants have failed to produce any documentation to support the grounds for termination" or "a fair opportunity to review and/or defend against any allegations." *Id.* Throughout February 2024, there continued to be issues regarding job duties in the Sheriff's office related to blood draws, which were reported to the Brown County Commission. *Id.* at 9–10.

On March 15, 2024, Lunzman and the Sheriff were interviewed by the independent investigator, Reed Rasmussen. *Id.* at 10. Lunzman provided "lab results proving menopause and the closed head injury[.]" *Id.* She also "explain[ed] the harassment [she] had been enduring from [] Hein and other personnel." *Id.* On March 18, 2024, Lunzman e-mailed Rasmussen "a list of harassment occurrences, misconduct and dates by [] Hein and other personnel, as well as [Lunzman being] banned from [the] Sheriff's Office and Jail without cause or documentation denying [Lunzman] due process . . . and negligent behavior on behalf of [the Brown County] Commission." *Id.*

Rasmussen's independent investigation was completed and provided to the Brown County Commission. *Id.* The Sheriff requested a copy of the internal

9

investigation results but was told the Brown County Commission would review the results at the next commission meeting. *Id.* The Brown County Commission minutes from April 9, 2024, indicate in the human resource report that "Lunzman was transferred to the position, Detention Officer, effective 04-04-24." *Id.*

Lunzman did not receive a copy of Rasmussen's report. *Id.* However, on April 16, 2024, the Sheriff was advised by a newspaper reporter that "[Lunzman] and the [Brown County] Sheriff's Office had been cleared of all wrongdoing." *Id.* The Sheriff asked the Commission whether a public announcement would be made, and Commission Chair Sutton advised that the investigation was not going to be released to anyone. *Id.* at 10–11.

On April 17, 2024, "[a] news article was published with the headlines, 'Brown County Sheriffs Wife at Center of Investigation Again Working at Jail.'" *Id.* at 11. Lunzman and the Sheriff asked the Brown County Commission during an open session "to investigate the leaks and ask for accountability from public official, [Police Chief] McNeil." *Id.* Another news article was published with the headline "Sheriffs Wife accuses Commission of Leaking Investigation Information." *Id.* Lunzman claims that to date, the leaks were not investigated. *Id.*

On April 24, 2024, Police Chief McNeil told the Sheriff that Lunzman "was incorrect" when she addressed the Brown County Commission on April 23, 2024, and he thought that Lunzman "should be either disciplined or fired."

10

*Id.* "[Police Chief] McNeil blamed [Lunzman] for all discord between the Sheriff's Office and Aberdeen Police Department." *Id.*

Amidst these happenings, Lunzman fell at work on April 26, 2024, and was injured. *Id.* at ¶55. She initially continued to work until her "symptoms manifested to paralysis, limiting work beginning on June 8, 2024." *Id.*

On April 30, 2024, at a Brown County Commission meeting, Police Chief McNeil "issue[d] a list of directives to the Sheriff concerning [Lunzman's] employment and education as a phlebotomist and changed position qualifications as a Detention Officer[,] publicly harassing, defaming, and humiliating [Lunzman]." *Id.* Lunzman asserts that "[p]ublicly addressing personnel matters in this way" violated her "right to confidentiality and may constitute a violation of South Dakota open meeting laws." *Id.* at 11–12.

On June 9, 2024, Lunzman requested work accommodations while awaiting surgery on August 19, 2024. *Id.* at 12 She was allowed to work limited hours from home, but then, her doctor removed her from all work activities on August 7, 2024. *Id.* Her surgery was scheduled for August 19, 2024. *Id.* While the record does not indicate that she underwent surgery, it is undisputed that Lunzman had not been to the jail to work since June 2024. Docket 6 at 13.

In July of 2024, Hein filed an internal complaint against the Sheriff and Lunzman, claiming that Lunzman was "teaching incorrect subjects under [] Hein's license." Docket 13-1 at 12. Hein claimed that Lunzman was "teaching recruits improper procedures under [] Hein's license." *Id.* This complaint was

11

investigated by attorney Melanie Carpenter, who provided her verbal findings to the Brown County Commission. *Id.* at 13.

On July 9, 2024, a Freedom of Information Act (FOIA) request was sent to Winter-Goodwin concerning Lunzman's employment status, wages, and position at the Sheriff's Office. *Id.* at 12. Winter-Goodwin advised that Tunheim had "already provided most of the information via phone." *Id.* After the FOIA request, two news articles were published: "BC Sheriff gives Wife new job as Work from Home Jail Detention Officer" with a subheading of "Scandal Plagued Spouse Working Remotely for her Husband, County's Top Cop"; and "Sheriff's Wife now Working from Home, Services Offered to County for Free, he Says." *Id.* at 12–13.

Lunzman again contacted investigator Rasmussen, requesting information used in his internal investigation. *Id.* Rasmussen advised her that Winter-Goodwin "refused to allow him to provide the documents" but she could request them directly from Winter-Goodwin. *Id.* She thereafter emailed Tunheim, requesting the disciplinary form from September 28, 2023, the original complaint, and the initial document and write up that was read to her and she was asked to sign. *Id.* at 13. Tunheim provided the requested information on August 2, 2024, but Lunzman does not think it is the same document she saw and had read to her on September 28, 2023. *Id.* Lunzman also requested the documents from Winter-Goodwin, who responded on August 16, 2024, that Lunzman had "already received the document and the matter was closed." *Id.* On August 8, 2024, Lunzman sent another request to Winter-

12

Goodwin for any and all documents involved in the write-up. *Id.* Winter-Goodwin responded that no action had been taken. *Id.*

On October 8, 2024, the Sheriff "was informed he was not receiving a raise for 2025" because he hired Lunzman. *Id.* At an open meeting on November 12, 2024, the Brown County Commission "confirmed the Sheriff would not receive a raise to show their displeasure for [him] hiring [Lunzman]." *Id.* The Brown County Commission stated that Lunzman was the "source of complaints"; yet according to Lunzman, they "failed to produce any documentation to support the statements or the grounds for termination." *Id.* at 14. At this meeting, the Commission indicated it would reconsider the Sheriff's raise if Lunzman quit or was fired. *Id.* Lunzman alleges that Commissioner Fjeldheim publicly shared her employment information "despite knowledge of her protected disability status." *Id..*

On January 1, 2025, Police Chief McNeil met with the Sheriff and "identified wrongdoing regarding 09-03-23 and 11-03-24 through 11-05-24." *Id.* Lunzman filed her lawsuit on April 25, 2025. Docket 1.

The record does not indicate Lunzman's current employment status, aside from her reference that her doctor removed her from all work activities on August 7, 2024. Docket 13-1 at 12.

In her prayer for relief Lunzman seeks (1) "[c]ompensatory damages for emotional distress, pain and suffering, reputational harm, and other non-economic injuries sustained[,]" (2) "[b]ack pay and front pay, or reinstatement to [Lunzman's] former roles and responsibilities," (3) [p]unitive damages against

13

the Defendants for their complete disregard, willful, malicious, and reckless conduct[,]" (4) "[d]eclaratory judgment that Defendants' actions violated [Lunzman's] rights under the U.S. Constitution and Federal and State Law[,]" (5) [i]njunctive relief, including an order requiring Defendants to take affirmative steps to prevent future discrimination and retaliation within the Brown County Offices[,]" (6) "[p]rejudgment and post-judgment interest[,]" (7) "[a]ttorneys' fees and costs[,]" and (8) "[a]ny other relief this Court deems just and proper." Docket 13-1 at 18.

## LEGAL STANDARDS

### Motion for Leave to Amend Complaint

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course no later than: . . . 21 days after service of a responsive pleading[.]" Fed. R. Civ. P. 15(a)(1)(B). If the time for amending as a matter of course has expired, a party "may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at (a)(2).

A decision to allow a party to amend a pleading is a matter of the court's discretion. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 714 (8th Cir. 2008). Under Federal Rule of Civil Procedure 15(a), leave to amend is to be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "parties do not have an absolute right to amend their pleadings, even under this liberal standard." *Sherman,* 532 F.3d at 715. "A district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to

14

cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1065 (8th Cir. 2005)).

Further, when, as here, "a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 497 (8th Cir. 2008). This showing of good cause "is not optional." *Sherman,* 532 F.3d at 716. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Id.* (citation omitted). "[P]rejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor[.]" *Id.* at 717.

**Motion to Dismiss**

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Sworr v. DeJoy,* No. 4:24-CV-04075-RAL, 2025 WL 1249566, at *1 (D.S.D. Apr. 30, 2025) (quoting Fed. R. Civ. P. 8(a)(2)). "Courts must accept the plaintiff's factual allegations as true but need not accept the plaintiff's legal conclusions." *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768–69 (8th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to 'state a claim to relief that is plausible on its face[,] meaning the plaintiff pleads factual

15

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sworr*, 2025 WL 1249566, at *1 (quoting *Ashcroft*, 556 U.S. at 678). Consequently, "[t]he factual allegations must be sufficient to 'raise a right to relief above the speculative level.'" *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## DISCUSSION

### Motion for Leave to Amend Complaint

#### I.    Diligence and Prejudice

Lunzman has already amended her complaint once, within the time allowed under Rule 15(a)(1)(B). Docket 6. Lunzman now seeks to amend her complaint a second time "to clarify and expand upon the factual allegations, including additional defendants, and address legal issues raised in Defendants' pending Motion to Dismiss." Docket 13 at 1. She claims the proposed "amendments ensure clarity, proper naming of defendants in their individual and official capacities, and provide a more robust factual framework under Twombly and Iqbal standards." *Id.* at 1–2. She asserts that "[a]llowing this amendment promotes judicial efficiency by potentially narrowing the legal issues and reducing the need for further motion practice." *Id.* at 2. Finally, Lunzman claims she is "not acting in bad faith and this motion is not intended for the purpose of delay." *Id.*

16

Defendants do not assert that Lunzman has failed to act diligently in attempting to meet the requirements of the Court's scheduling order or that granting her motion to amend will cause them unfair prejudice. Docket 18 at 4. Instead, they argue that her motion should be denied because "[h]er Second Amended Complaint (SAC) fails to state any claims against any County Defendant which could withstand a motion to dismiss for failure to state a claim rendering it futile." *Id.* at 1.

The Court finds that Lunzman acted diligently in filing her motion for leave to file a second amended complaint and that the defendants will not be prejudiced if the motion is granted. She filed her motion just ten days after defendants filed their motion to dismiss, Docket 10, and there is no indication that Lunzman strategically withheld the facts or claims she now wishes to include. Rather, it appears that Lunzman is trying to respond to some of the arguments raised by defendants in the motion to dismiss. *See Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 951 (D.S.D. 2016) ("[I]t is common practice for a party to seek leave to amend in response to a motion to dismiss." (citation omitted)).

## II.    Futility

"Futility is always a basis to deny leave to file an amended complaint." *Roemen v. United States*, 4:19-CV-4006-LLP, 2021 WL 2351684, at *7 (D.S.D. June 9, 2021) (quoting *A.H. v. St. Louis City*, 891 F.3d 721, 730 (8th Cir. 2018)). Futility in this regard "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to

dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (citation omitted). Under this standard, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, "[s]tating an adequate claim for relief requires more than 'a formulaic recitation of the elements of a cause of action.'" *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quoting *Twombly*, 550 U.S. at 555). "Matters outside the pleading may not be considered when conducting a futility analysis under Rule 12(b)(6) other than some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Roemen*, 2021 WL 2351684, at *7 (citation omitted).

The Court evaluates whether amendment would be futile on each of Lunzman's claims raised in the second amended complaint.

### A.    Count I – Americans with Disabilities Act (ADA)

The Americans with Disabilities Act (ADA) "makes it unlawful for a covered employer to discriminate against any 'qualified individual on the basis of disability.'" *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (quoting 42 U.S.C. § 12112(a)). "To establish discrimination under the ADA, an employee must show that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability." *Id.* "The ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more

18

major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]'" *Kale v. Aero Simulation Inc.*, No. 5:22-CV-05081-KES, 2023 WL 6255013, at *2 (D.S.D. Sept. 26, 2023) (quoting 42 U.S.C. § 12102(1)).

In her second amended complaint, Lunzman identifies her disability as a 2013 head injury. However, she has not indicated that her head injury substantially limited her ability to perform her work or affected any other significant life activity. She also does not claim that any of the named defendants regarded her as having a disability or considered her unable to work. She only asserts that any symptoms of possible impairment she may have exhibited while taking the blood draw on September 3, 2023, should be attributed to her 2013 head injury.

Even if this Court accepts that her 2013 head injury constitutes a disability, it is not clear from Lunzman's second amended complaint that she suffered an adverse employment action, or even that her employment has officially ended. Rather, she claims only that she has been "off work" since August 2024 due to a work injury and doctor's order. Further, although she alleges that investigations were done on the blood draw and e-mail issues, and on Hein's complaint; that she was banned from doing her volunteer work at the jail; and that she was transferred to the position of detention officer, these allegations do not evince a material employment disadvantage. It is well settled that "[t]o show that [s]he suffered an adverse employment action, [Lunzman] must establish a tangible change in duties or working conditions that

constitutes a material employment disadvantage." *See Brasch v. Peters*, 479 F. Supp. 2d 1045, 1065 (E.D. Mo. 2007). "Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action." *Id.*

Accepting Lunzman's own account as true, she has not shown a substantial mental or physical limitation in a major life activity due to the 2013 head injury. She also has not shown she suffered a decrease in her title, salary, or benefits or that she suffered any materially significant disadvantage in her employment. Therefore, she has failed to meet her burden to establish a disability claim, and her ADA claim is futile.

### B.    Counts II, III, and IV – § 1983 Claims

Under Title 42, § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Dunn v. Penfield*, No. 5:23-CV-05025-KES, 2024 WL 1723705, at *9 (D.S.D. Jan. 22, 2024) (quoting 42 U.S.C. § 1983). "[S]ection 1983 does not establish any substantive rights." *Id.* (quoting *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012)). Instead, it "serves as a vehicle for 'vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Henley*, 686 F.3d at 640 (quoting *Baker v.*

20

*McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, "an underlying constitutional or statutory violation is a predicate to liability under section 1983." *Id.*

"To state a claim under § 1983, a plaintiff must establish two elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under the color of state law." *Forman v. Brookings Police Dep't*, No. 4:22-CV-04034-KES, 2023 WL 3766633, at *4 (D.S.D. Mar. 24, 2023) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). County and municipal employees, like defendants here, may be sued under § 1983 in their individual capacities, their official capacities, or both. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

### 1.    Official capacity claims

In her second amended complaint, Lunzman brings official capacity claims against Brown County Commissioners Duane Sutton, Mike Gage, Drew Dennert, Doug Fjeldheim, and Mike Wiese; Brown County State's Attorney Karly Winter-Goodwin; Brown County Human Resource Director Allison Tunheim; Brown County Jail Nurse Monica Hein; and Aberdeen Police Chief Dave McNeil. Docket 13-1 at 1–3.

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Lunzman's claims against Sutton, Gage, Dennert, Fjeldheim, Wise, Winter-Goodman, Tunheim, and Hein in their official capacities are, in effect, against

Brown County. Likewise, Lunzman's claims against Police Chief McNeil in his official capacity are effectively against the City of Aberdeen.

But a municipal or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). And here, Lunzman's second amended complaint contains no facts that would support a claim that any policy or custom by Brown County or the City of Aberdeen has deprived her of a federal right. Therefore, Lunzman's claims against Sutton, Gage, Dennert, Fjeldheim, Wise, Winter-Goodman, Tunheim, Hein, and Police Chief McNeil in their official capacities fail and are futile. For these same reasons, Lunzman's claims against Brown County and the City of Aberdeen are futile. Finally, because the Aberdeen Police Department is not a suable entity, her claim against that department is futile. *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (upholding dismissal of pro se § 1983 claims against "[t]he West Memphis Police Department and West Memphis Paramedic Services" because they "are simply departments or subdivisions of the City government" and "not juridical entities suable as such").

### 2.    Individual capacity claims

Lunzman also asserts individual capacity claims against Sutton, Gage, Dennert, Fjeldheim, Wise, Winter-Goodman, Tunheim, Hein, and Police Chief McNeil, and she seeks both monetary damages and injunctive relief.

22

### a. Individual capacity claims for injunctive relief

As a preliminary matter, Lunzman's request for injunctive relief against Sutton, Gage, Dennert, Fjeldheim, Wise, Winter-Goodman, Tunheim, and Hein in their individual capacities fails. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity."). Therefore, Lunzman's request for injunctive relief against these defendants in their individual capacities is futile.

### b. Individual capacity claims for monetary relief

Qualified immunity is a defense available to government officials sued in their individual capacities for monetary relief. *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023). "A necessary precursor to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted, is the determination of whether the plaintiff has asserted a

23

violation of a constitutional right *at all.*" *Johnson,* 172 F.3d at 536 (emphasis in original).

Here, Lunzman attempts to bring claims against the defendants in their individual capacities for monetary damages under § 1983 for First Amendment Retaliation (Count II), equal protection and due process (Count III), and deprivation of rights under color of state law (Count IV). Each claim is addressed separately.

### i.  Count II - First Amendment Retaliation

"To allege a First Amendment retaliation claim, a plaintiff must 'show (1) [s]he engaged in a protected activity, (2) the government official took adverse action against h[er] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Ward v. United States Marshals*, No. 5:23-CV-05061-CCT, 2025 WL 949242, at *20 (D.S.D. Mar. 28, 2025) (quoting *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004).

Lunzman alleges she engaged in protected activity "by speaking out on matters of public concern, including misconduct, unsafe practices, and discriminatory treatment within the County." Docket 13-1 at 15. Lunzman claims she "reported conduct related to unsafe working conditions and harassment by []Hein," *Id.* at 5. However, she does not indicate who she made

24

this report to or identify the unsafe working conditions. She also claims she and the Sheriff asked the Brown County Commission to investigate the media leaks, but the leaks were not investigated. *Id.* at 11. Further, while she does not indicate what she said, she references that she addressed the Brown County Commission on April 23, 2024. *Id.*

Lunzman's allegations all appear to be related to her official duties. *See Mogard v. City of Milbank*, 932 F.3d 1184, 1189 (8th Cir. 2019) ("A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if he spoke pursuant to his official duties." (quoting *Groenewold v. Kelley,* 888 F.3d 365, 371 (8th Cir. 2018)). "When public employees speak on matters of public concern pursuant to their official duties, 'the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (citation omitted). Moreover, while Lunzman claims she was retaliated against for speaking out on the alleged matters, she does not allege that any adverse action taken against her by the Commission would chill a person of ordinary firmness from continuing to speak at Commission meetings. *See, e.g., Rinne*, 65 F.4th at 384 (finding that banning plaintiff from "entering county property is a concrete consequence that would objectively chill a person of ordinary firmness from criticizing county commissioners"). Thus, even accepting Lunzman's facts as true, she has failed to establish a claim for First Amendment Retaliation under § 1983, making her claim futile.

### ii.    Count III - Fourteenth Amendment Equal Protection & Due Process Claims under § 1983

The Equal Protection Clause of "[t]he Fourteenth Amendment requires that the government 'treat similarly situated people alike[.]'" *Murphy v. Missouri Dep't of Corrections*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). For a plaintiff to prevail on an equal protection claim, she "must show that [s]he was treated differently than other persons who were 'in all relevant respects similarly situated.'" *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) (citation omitted).

Defendants allege that Lunzman's equal protection claim is futile because Lunzman does not allege that she was treated differently than others similarly situated and because she is an at-will employee with no liberty interest in continued employment. Docket 18 at 8. Further, they argue that her allegations are mere legal conclusions and that she has not plausibly alleged she was deprived of property and liberty interests without due process. *Id.* at 9–10. The Court agrees that Lunzman's filings fail to state an equal protection suspect classification or fundamental right claim. But the Court must also consider whether Lunzman has pled a class-of-one equal protection claim.

The Supreme Court recognized a class-of-one equal protection claim in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Eighth Circuit applied the class-of-one analysis in *Robbins v. Becker*, holding that the threshold inquiry in the class-of-one equal protection claim is whether the plaintiff is similarly situated to others who allegedly received preferential

26

treatment. 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Domina v. Van Pelt,* 235 F.3d 1091, 1099 (8th Cir. 2000)). Absent such a threshold showing, a plaintiff does not have a viable equal protection claim. *Id.* (quoting *Klinger v. Dep't of Corr.,* 31 F.3d 727, 731 (8th Cir.1994)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Id.* (quoting *Reget v. City of La Crosse,* 595 F.3d 691, 695 (7th Cir. 2010)).

Here, Lunzman fails to state a class-of-one equal protection claim. She does not establish that others, similarly situated to her, received preferential treatment. She also does not claim that anyone else is identical or directly comparable to her in all material respects. Thus, her Fourteenth Amendment claim for equal protection is futile.

### iii.    Count IV – Deprivation of rights under color of state law under § 1983

In Count IV, Lunzman alleges that "Defendants' conduct and/or act of omission was intentional, arbitrary, retaliatory, and lacking any rational basis, in violation of the Defendants' Oath of Office and Brown County Policy and Procedure" and was "retaliatory, intentional, arbitrary, and breaching the recommendations and rules of Workman's Compensation." Docket 13-1 at 16. She also alleges a breach of "the recommendations and rules of Workman's Compensation[.]" *Id.*

27

But she has not alleged facts in support of this cause of action. To the contrary, she indicates that the "Sheriff, in consultation with [] Tunheim, following the rules of Workman's Compensation . . . permitted [Lunzman] to work limited hours a week from home to accommodate for [Lunzman's] injuries and paralysis[.]" Docket 13-1 at 12. Further, she states that on July 9, 2024, "Tunheim receive[d] Workman's Compensation letter from plaintiff's advocate stating to make accommodations for [Lunzman] to work at home, pending surgery or Doctor changing orders." *Id.*

Because Lunzman has not alleged facts that suggest a violation of her rights under the Constitution or the laws of the United States, which is a requirement for § 1983 liability, her claim fails. Importantly, to sue public officials in their individual capacity under § 1983, Lunzman must show that these officials "violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow,* 457 U.S. at 818. This she has not done. Therefore, her § 1983 claim for deprivation of rights under the color of state law is futile.

### C.    Count V – State law wrongful termination claim

In Count V of her second amended complaint, Lunzman alleges wrongful termination under South Dakota common law. Docket 13-1 at 16. Defendants argue that her claim should be dismissed as not ripe because she has not been terminated from employment but, rather, is off work due to restrictions from her physician. Docket 18 at 11.

28

Lunzman does not assert in her statement of facts in either the first or second amended complaints that she has been terminated from employment. *See generally* Docket 6; Docket 13-1. She claims in her "statement of claims for relief" section that she "was given an ultimatum to resign or be terminated." Docket 13-1 at 16. This appears to reference a communication by the Brown County Commission to her husband, the Sheriff, that they were not giving him a raise because they were not pleased he had hired Lunzman, who they perceived to be the source of complaints, but that they would reconsider the Sheriff's raise if Lunzman quit or was fired. *Id.* at 16.

Even accepting Lunzman's allegations as true, they do not establish that Lunzman quit her job or has been terminated. Therefore, her wrongful termination claim under South Dakota law is not ripe, and allowing her to amend her complaint to assert such a claim would be futile. *See Reed v. Cedar Cnty.*, 398 F. Supp. 2d 1017, 1021 (N.D. Iowa 2005) ("A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Wyatt V.I., Inc. v. Government of Virgin Islands,* 385 F.3d 801, 806 (3d Cir. 2004)).[5]

---

[5] But even if Lunzman has a ripe state law claim for wrongful termination, allowing Lunzman to file her second amended complaint asserting that cause of action would be futile because this Court would decline to exercise supplemental jurisdiction when it dismissed all claims over which there is original jurisdiction. *See Zutz*, 601 F.3d at 850 (upholding district court's decision to dismiss the state law claim after it had dismissed all claims over which it had original jurisdiction).

**D.    Count VI – Title VII hostile work environment and retaliation**

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Walker v. MG Oil Co.*, No. 5:25-CV-05029-RAL, 2025 WL 3496791, at *7 (D.S.D. Dec. 5, 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024)). The employer is the only appropriate defendant in a Title VII claim. *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998) (citing *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) ("[S]tatutory liability [under Title VII] is appropriately borne by employers, not individual supervisors.")).

In Count VI of her second amended complaint, Lunzman alleges discrimination in employment based on her sex and/or protected activity by hostile work environment and retaliation. Docket 13-1 at 17. While Lunzman "need not plead facts establishing a prima facie case for [her] Title VII claim," the allegations in her "complaint must 'give *plausible support* to the reduced prima facie requirements that arise under *McDonnell Douglas*[.]'" *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017)).

"The elements are 'part of the background against which a plausibility determination should be made.'" *Id.* (citation omitted). In the absence of direct discrimination, a plaintiff can establish a prima facie case of sex discrimination

30

by showing that "(1) she was a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of [sex] discrimination." *Deyo v. Sec. First Bank*, No. 5:23-CV-05012-KES, 2025 WL 775792, at *5 (D.S.D. Mar. 11, 2025) (quoting *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023)).

Lunzman plausibly pleads that she belongs to a protected group as a female. However, she does not allege, or support an inference, that she was discriminated against based on her sex. Moreover, it is not clear from her claims that she was qualified for her job, that she suffered an adverse employment action, or even that her employment has officially ended. Therefore, Lunzman has not stated a claim of sex discrimination against Brown County, her employer, that is plausible on its face, making the claim futile.

Also in Count VI, Lunzman claims she "was subjected to a hostile work environment based on her sex and/or protected activity, including but not limited to inappropriate comments, exclusion, and differential treatment." Docket 13-1 at 17. A prima facie case for hostile work environment requires the plaintiff show that "(1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a casual nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action." *Warmington*, 998 F.3d at 799. The fourth element "involves 'both objective and subjective components.'" *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). "At the

31

pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered.'" *Id.* (citation omitted).

The Court considers the totality of the circumstances in determining whether a complaint alleges an objectively hostile work environment. *Id.* at 799. Here, Lunzman has not alleged any conduct that is "so intimidating, offensive, or hostile that it poisoned the work environment." *See id.* (citation omitted). Instead, she relies on the personnel actions taken by the Brown County Human Resource Director, State's Attorney, and Commissioners in addressing her concerns about her work at the jail. Those actions include the hiring of outside investigators to evaluate the situations and the ultimate determination that Lunzman should not be allowed to continue her volunteer work at the jail and should be transferred to a detention officer position. But these are not allegations of conduct that was "physically threatening or humiliating[.]" *See id.* (citation omitted). Nor does Lunzman allege that any of these actions "unreasonably interfered with [her] work performance." *See id.* (citation omitted). Even accepting as true all the factual allegations in her second amended complaint and giving her the benefit of all reasonable inferences that can be drawn from those allegations, Lunzman has not stated a hostile work environment claim that is plausible on its face. *See Blomker*, 831 F.3d at 799 ("[t]he 'standards for a hostile environment are demanding, and

32

conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment'" (citation omitted)).

Lastly within Count IV, Lunzman alleges that she "experienced retaliation after engaging in protected activity, including complaints about harassment and discrimination." *Id.* at 17. To bring a retaliation claim, Lunzman "must produce either direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework." *Young–Losee v. Graphic Packaging Int'l, Inc.,* 631 F.3d 909, 912 (8th Cir. 2011). Under that framework, Lunzman must establish a prima facie case of retaliation by showing "(1) she engaged in a protected activity; (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Robinson v. Donahoe*, 957 F. Supp. 2d 1119, 1132 (D.S.D. 2013).

Lunzman asserts that she had some disputes with Hein and others about procedures at the jail, that she shared her side of those issues with Reed Rasmussen when he conducted his investigation, that she asked the Brown County Commission to investigate the leaks to the media, and that she spoke at a commission meeting on April 23, 2024. But she has not alleged that she engaged in "protected activity" or that she suffered an adverse employment action. Therefore, it follows that she cannot establish a causal connection between the two. Because Lunzman has not alleged sufficient facts to support a retaliation claim, she cannot make her prima facie showing or carry her

33

burden of creating an inference of retaliation. Thus, her Title VII claim for retaliation is futile.

### D. Count VII – State law claims (retaliation & negligent supervision)

In Count VII of her second amended complaint, Lunzman alleges state law claims for retaliation and negligent supervision. Lunzman's state law retaliation claim is futile for the same reasons her retaliation claim addressed above is futile.

As it relates to a claim of negligent supervision, the South Dakota Supreme Court "has 'acknowledged that employers can be held responsible for the negligent acts of their employees under a respondeat superior theory, and that negligent hiring and supervision of an employee may also give rise to liability.'" *Finkle v. Regency CSP Ventures Ltd. P'ship*, 27 F. Supp. 3d 996, 999 (D.S.D. 2014) (quoting *Rehm v. Lenz,* 547 N.W.2d 560, 566 (S.D. 1996)). "[N]egligent supervision [requires] that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees as to prevent harm to other employees or third persons." *Medina v. Botello*, 595 F. Supp. 3d 838, 849 (D.S.D. 2022) (alterations in original) (quoting *Total Auctions & Real Estate, LLC v. S.D. Dep't of Revenue & Reg.*, 888 N.W.2d 577, 582 (S.D. 2016)). "[A] negligent supervision claim requires that an employee commit an underlying tort." *Total Auctions*, 888 N.W.2d at 582 (citing *Schoff v. Combined Ins. Co. of Am.,* 604 N.W.2d 43, 53 (Iowa 1999) ("[A]n employer cannot be held liable for negligent supervision . . . where the conduct

34

that proper supervision and training would have avoided is not actionable against the employee.")).

Lunzman's second amended complaint fails to allege any facts suggesting that any of the named defendants were guilty of committing an underlying tort. Because she fails to state an actionable tort by any defendant, she also fails to state a claim against Brown County and the Brown County Commissioners for negligent supervision. *See Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993) ("If there is no tort liability to the plaintiff against [the employee] individually, it follows that [the employer] cannot be held liable for his conduct.")). Therefore, Lunzman's negligent supervision claim is futile.

### E.    Count VIII – Intentional infliction of emotional distress

Lunzman alleges intentional infliction of emotional distress in Count VIII of her second amended complaint. "Under South Dakota law, a plaintiff alleging intentional infliction of emotional distress must show four elements: '(1) extreme and outrageous conduct by the defendant; (2) that the defendant intended to cause severe emotional distress; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress must result.'" *Wade v. Sanford Med. Ctr.*, No. 3:16-CV-03034-RAL, 2018 WL 3825904, at *21 (D.S.D. Aug. 10, 2018) (quoting *Stratmeyer v. Engberg*, 649 N.W.2d 921, 926 (S.D. 2002)). "Plaintiffs attempting to demonstrate that a defendant's conduct was extreme and outrageous face a high threshold." *Id.* (citing *Harris v. Jefferson Partners, L.P.*, 653 N.W.2d 496, 500 (S.D. 2002) ("Proof under this tort must exceed a rigorous benchmark.")).

35

The defendants' conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.'" *Fix v. First State Bank of Roscoe*, 807 N.W.2d 612, 618 (S.D. 2011) (quoting *Richardson v. E. River Elec. Power Co-op., Inc.*, 531 N.W.2d 23, 27 (S.D. 1995)). The conduct must be of a nature that is "calculated to cause," and which actually causes, extremely serious mental distress. *Citibank (S.D.), N.A. v. Hauff*, 668 N.W.2d 528, 535 (S.D. 2003) (quoting *Richardson*, 531 N.W.2d at 27). Whether a defendant's conduct is extreme and outrageous enough to permit recovery is initially a question for the court. *Fix*, 807 N.W.2d at 618; *Richardson*, 531 N.W.2d at 27. Only "[w]here reasonable men may differ, [is it] for the jury . . . to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Richardson*, 531 N.W.2d at 27 (quoting Restatement (Second) of Torts § 46 cmt. h (1965)).

Lunzman alleges that defendants "failed to protect internal information, allowing information to be leaked to the media causing extreme mental and emotional distress" and that defendants "allow[ed] presentation of information regarding [Lunzman] in an open recorded meeting." Docket 13-1 at 17. Even accepting Lunzman's allegations as true, this conduct does not meet the "rigorous benchmark" of going beyond "all possible bounds of decency, and be regarded as . . . utterly intolerable in a civilized community." *See Harris*, 653 N.W.2d at 500. Therefore, Lunzman's claim for intentional infliction of emotional distress is futile.

36

### F.    Count IX – Violation of 18 U.S.C. § 241

In Count IX of her second amended complaint, Lunzman alleges violation of 18 U.S.C. § 241. Docket 13-1 at 17. Section 241 criminalizes a conspiracy to violate civil rights. "But the Eighth Circuit has indicated that such criminal statutes do not provide a private right of action." *Richmond v. Wiese*, No. 4:25-CV-04217-ECS, 2026 WL 381279, at *2 (D.S.D. Feb. 11, 2026) (quoting *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under § 241, even though the statute allows federal authorities to pursue criminal charges)); *see also Thornsberry v. Barden*, 854 F. App'x 105, 106 (8th Cir. 2021) (per curiam) (citing *Wadena*, 152 F.3d at 846 (holding that there is no private cause of action under § 241")). Accordingly, Lunzman's request for leave to amend to add § 241 claims against defendants in their individual and official capacity is futile.

### III.   Lunzman has no standing to bring claims on behalf of her husband, the Sheriff

In her complaint, Lunzman includes allegations concerning how her husband, the Sheriff, was treated by the defendants. Docket 13-1 at 13. But she lacks standing to bring claims on another's behalf. *See Robinson v. Donahoe*, 957 F. Supp. 2d 1119, 1128 (D.S.D. 2013) ("Standing . . . requires 'a showing of injury in fact *to the plaintiff* that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision.'" (quoting *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir. 2009)).

Therefore, her claims brought on behalf of anyone other than herself are not properly before the Court in this case.

**Motion to Dismiss**

The Court's determination that the claims asserted by Lunzman in her second amended complaint against defendants are futile necessarily requires dismissal of the same claims asserted by Lunzman in her first amended complaint, which is the operative complaint. To be sure, the first amended complaint contains fewer factual allegations supporting the same claims asserted by Lunzman in her second amended complaint. Further, the futility analysis is governed by the same standard as that applied to a motion to dismiss under Rule 12(b)(6). *See Zutz*, 601 F.3d at 850–51. Consequently, if Lunzman's proposed amended pleading is futile, then so is her operative complaint to the extent it asserts the same claims on fewer or less developed allegations, and dismissal of her first amended complaint pursuant to Rule 12(b)(6) is appropriate.

However, the Court notes that Lunzman's second amended complaint did not carry over her age discrimination claim and her claim of menopause as a disability, claims she asserted in her first amended complaint. Because the Court has denied Lunzman leave to file a second amended complaint and the first amended complaint is the operative complaint, the Court examines whether Lunzman has failed to state a claim upon which relief may be granted on her remaining claims in the first amended complaint.

## I.  Count II – ADEA (age discrimination)

"The Age Discrimination in Employment Act (ADEA) prohibits employers from discriminating against employees based on age." *Grevlos v. Augustana Univ.,* No. 4:23-CV-04086-KES, 2023 WL 8880321, at *12 (D.S.D. Dec. 22, 2023) (quoting 29 U.S.C. § 623(a)(1)). "To prove an indirect age discrimination claim, a plaintiff must first establish a prima facie claim, which requires that the employee (1) was at least forty years old, (2) was meeting her employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Id.* (quoting *Smothers*, 63 F.4th at 728). "At all times, the burden of persuasion rests with the plaintiff to prove that "age was the 'but-for cause", of the employer's adverse employment action. *Grevlos*, 2023 WL 8880321, at *12 (quoting *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011)).

Lunzman's first amended complaint indicates that she was born in 1973, making her approximately 53 years old. This establishes the first element of a prima facie showing of age discrimination. However, Lunzman does not allege that she was meeting her employer's legitimate performance expectations, that she suffered an adverse employment action, or that any of the circumstances here give rise to an inference of discrimination. She also did not allege facts demonstrating that her age was the "but-for cause" of any adverse employment action. Instead, she speculates that her age was somehow tied to the fact she was questioned on personnel issues and that an investigation was done after she thought the matter was closed. To survive a motion to dismiss, Lunzman's

"factual allegations must be sufficient to 'raise a right to relief above the speculative level.'" *Cook v. George's, Inc.*, 952 F.3d 935, 938-939 (8th Cir. 2020). Because Lunzman has failed to state a claim for age discrimination under the ADEA, defendants are entitled to dismissal of this claim.

## II.   Count III – ADA (menopause)

In her first amended complaint, Lunzman identifies menopause as a "disability or perceived disability" for which she was discriminated against. Docket 6 at 6.  She more specifically claims that any symptoms of possible impairment she may have exhibited while taking the blood draw on September 3, 2023, should be attributed to menopause and that she had to provide lab results proving menopause to Reed Rasmussen. *Id.* at 6, 10.

The Court previously quoted the law governing a discrimination claim under the ADA as it relates to Lunzman's 2013 head injury, namely that she must show she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability." *Hill*, 737 F.3d at 1216. Lunzman does not, just as she did not with her ADA claim related to her 2013 head injury, allege facts that could support a finding that she is disabled within the meaning of the ADA. In that regard, she does not assert that menopause substantially limited her ability to perform her work, that it affected any other significant life activity, or that any of the named defendants regarded her as having a disability or considered her unable to work. *See* 42 U.S.C. § 12102 (defining "disability"). Importantly, while some courts have considered whether

40

menopause qualifies as a disability, these courts still require that menopause cause a "substantial mental or physical limitations in a major life activity so as to qualify as a disability." *See Klein v. Fla., Dep't of Child. & Fams. Servs.,* 34 F. Supp. 2d 1367, 1372 (S.D. Fla. 1998). Rather, she contends that any symptoms of possible impairment she may have exhibited while taking the blood draw on September 3, 2023, should be attributed to menopause. Therefore, Lunzman has failed to state a claim upon which relief may be granted, and the defendants are entitled to dismissal of this claim.

**ORDER**

Accordingly, it is hereby

ORDERED that Lunzman's motion for leave to file a second amended complaint (Docket 13) is denied; it is further

ORDERED that defendants' motion to dismiss (Docket 10) is granted; it is further

ORDERED that Lunzman's motion for protective order (Docket 15) is denied as moot; and it is further

ORDERED that Lunzman's supplemental motion to expedite (Docket 23) is denied as moot.

Dated March 24, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

41